**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RHOADS INDUSTRIES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 07-4756 |
| BUILDING MATERIALS CORP. OF AMERICA, | : | |
| et al. | : | |

**MEMORANDUM RE: WAIVER OF ATTORNEY-CLIENT PRIVILEGE**

**Baylson, J.**                                                                    **November 14, 2008**

Recently enacted Federal Rule of Evidence 502 adopts a national standard that an inadvertent disclosure of privileged information does not waive the privilege if the holder of the privilege took reasonable steps to prevent disclosure and to rectify the error.[1]  A dispute in this case requires review of the procedure used by the Plaintiff, which resulted in the inadvertent disclosure of over eight hundred documents.  Should this result in a waiver of the privilege?  Judges have often grappled with this issue, adjudicating disputes as to whether the allegedly inadvertent production of privileged materials was truly inadvertent, or careless, or reflected a complete absence of control over the discovery process.

In this case, Plaintiff Rhoads Industries, Inc. ("Rhoads") admits that it produced to the Defendants over eight hundred electronic documents which were privileged and asserts that the production was inadvertent.  In accordance with the provisions of Rule 26(b)(5)(B), Defendants,

---

[1]On September 19, 2008, President Bush signed Rule 502 into law.  In accordance with 28 U.S.C. § 2074(b), any change in evidence rules pertaining to privileges must be enacted by Congress.  Rule 502 was the product of several years' work by the Advisory Committee on Rules of Evidence of the Judicial Conference of the United States.  As liaison from the Advisory Committee on Civil Rules, I am a non-voting member of the Evidence Committee.

upon receiving notice of the inadvertent production, segregated the asserted privileged documents, provided them for in camera review by the Court, and then the parties agreed that the documents could be returned to Rhoads for logging on a privilege log and for further review.

Defendants in this case have filed a joint motion to deem certain of Plaintiff Rhoads Industries, Inc.'s ("Rhoads") privilege claims waived (Doc. Nos. 60 and 63). The parties have engaged in extensive briefing on this issue. Rhoads has filed affidavits and supporting documents by individuals who were personally involved in its production of documents, and an evidentiary hearing was held on November 5, 2008. Further argument was held on November 13, 2008.

Defendants' motions are based on contentions that Rhoads' document production was careless, that Rhoads delayed too long in seeking return of the documents, that Rhoads failed to produce complete and accurate privilege logs, and that the Court should deny Rhoads' request that the documents be returned and conclude that Rhoads waived the privilege as to those documents.[2] Defendants' motions will be granted as to the privileged communications not logged as of June 30, 2008, but otherwise will be denied.

**A.      Factual Background of the Case**

Rhoads specializes in building large-scale construction projects. It entered into a $5.584 million contract with Defendant Building Materials Corporation of America, also known as GAF, to construct a plant in Quakertown, Pennsylvania. Alleging breach of contract and other claims, Rhoads instituted this suit and also named as a Defendant R.W. Cooper & Associates,

---

[2]Defendants do not assert that Rhoads' conduct was purposeful or warrants finding a general waiver of the attorney-client privilege.

Inc., asserting against it a claim of negligent misrepresentation.  The case was previously

assigned to Judge Diamond, who dismissed certain claims of Rhoads.  Extensive discovery

ensued during which the case was reassigned to me.  Summary Judgment Motions are pending

and have been extensively briefed, but I determined that disposition of this privilege issue should

precede consideration of the Summary Judgment Motions.

**B.**     **Rule 502 and Standards for Determining Waiver by Inadvertent Disclosure**

In enacting Rule 502, Congress specified that it will apply in all proceedings commenced

after the date of enactment, and "insofar as is just and practicable, in all proceedings pending"

when enacted.  Pub. L. 110-322, § 1(c), 122 Stat. 3537 (2008).  I conclude that it would be just

and practicable to apply Rule 502 in the present case because it sets a well defined standard,

consistent with existing mainstream legal principles on the topic of inadvertent waiver.

This national standard, which the Committee Note states is a "middle ground" among the

many precedents, provides as follows:

> **(b)** *Inadvertent disclosure*. – When made in a federal
> proceeding or to a federal office or agency, the disclosure does not
> operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable
> steps to prevent disclosure, and
>
> (3) the holder promptly took reasonable steps to rectify the
> error, including (if applicable) following Fed. R. Civ. P.
> 26(b)(5)(B).

Fed. R. Evid. 502.  Our research does not disclose that the Third Circuit has stated a specific test

for determining inadvertent disclosure of privileged material, but it has recognized that

inadvertent disclosure does not constitute a voluntary waiver.[3]

The Advisory Committee Note to Rule 502 summarizes the multi-factor test used by a majority of courts:

> The stated factors (none of which are dispositive) are the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness. The rule does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case. The rule is flexible enough to accommodate any of those listed factors.

A widely cited case setting an appropriate standard is Judge Joyner's opinion in <u>Fidelity & Deposit Co. of Md. v. McCulloch</u>, 168 F.R.D. 516 (E.D. Pa. 1996), which identifies the following factors as relevant on the issue of inadvertent disclosure of privileged material:

(1)     The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production.
(2)     The number of inadvertent disclosures.
(3)     The extent of the disclosure.
(4)     Any delay and measures taken to rectify the disclosure.
(5)     Whether the overrriding interests of justice would or would not be served by relieving the party of its errors.

<u>Id.</u> at 522.

In <u>Fidelity</u>, Judge Joyner found that the privilege was not waived as to the initial disclosure of privileged documents based on the following factors. <u>Id.</u>:

---

[3]<u>Redland Soccer Club, Inc. v. Dep't of the Army of U.S.</u>, 55 F.3d 827, 856 (3d Cir.1995) (upholding district court ruling that inadvertent disclosure of documents did not waive the privilege in them). As opposed to inadvertent disclosure, which is the subject matter of this Memorandum, there have been many cases on other types of waiver, generally classified as either "selective" waiver when a party seeks to disclose privileged materials to one party but retain the privilege in those materials as to other parties, and a "general" waiver when the party gives up the privilege completely. The Third Circuit adopted a fairly draconian rule rejecting selective waiver. <u>Westinghouse Elec. Corp. v. Republic of the Phil.</u>, 951 F.2d 1414 (3d Cir. 1991).

- Plaintiff's precautions against disclosure were "at least minimally adequate."
- The number of disclosures was small relative to the number of documents reviewed and produced.
- The extent of disclosure was minimal, disclosing no significant facts about the substance of any legal opinion.
- A tight discovery schedule created time pressures.
- The attorney-client privilege provides sufficient "good cause" under Rule 26(c) to grant the protective order.
- <u>But</u> the court noted that the Plaintiff's efforts to rectify the disclosures were not "especially vigilant."

However, Judge Joyner found that the privilege was waived as to a second instance of disclosure of privileged documents based on the following factors.  <u>Id.</u> at 523:

- Plaintiff's carelessness since it had reviewed the documents twice at this stage of the litigation.
- Even though the disclosure was only six documents, two of these went to the heart of the privilege that the plaintiff was asserting in this case.
- Time pressures had substantially eased at this point in the litigation.
- Plaintiff made no efforts to rectify the situation.

The advent of electronically stored information ("ESI") has been widely discussed and has already resulted in amendments to the discovery rules.[4]  Keyword and name searches are frequently employed as an initial method to screen and sort documents, but they are not foolproof.  For instance, privileged communications frequently creep into e-mail "chains," but may appear only to some participants in the chain depending on a user's application of the "reply" and "forward" commands.  These issues inferably led to at least some of Rhoads' inadvertent disclosures.

There do not appear to be any decisions in this District applying the balancing test to electronic discovery.  However, there are two other recent cases that do discuss inadvertent

---

[4]<u>See generally</u> <u>Zubulake v. UBS Warburg LLC</u>, 229 F.R.D. 422, 440 (S.D.N.Y. 2004) (discussing recent cases, treatises, guidance, and rules pertaining to ESI).

disclosure in the context of electronic discovery.

In Amersham Biosciences Corp. v. Perkinelmer, Inc., 2007 WL 329290 (D.N.J. 2007), Judge Linares follows the same five-factor test used in Fidelity (but cites the test to Ciba-Geigy Corp. v. Sandoz, Ltd., 916 F.Supp. 404, 411 (D.N.J.1995)).  Judge Linares remanded the magistrate judge's order as to 542 Lotus Notes e-mails that were inadvertently produced, based on his finding of a factual error in the magistrate judge's determination of the reasonableness of the precautions taken.  Id. at 4-5.  The Plaintiff inadvertently produced the e-mails because it believed privileged e-mails had been successfully segregated and deleted, but in fact the e-mails remained in the larger electronic file produced to the Defendant.  Id. at *1.  The magistrate judge determined that the plaintiff's error as to the inadvertently produced e-mails was not apparent on the face of the e-mails because the plaintiff was unaware of the existence of underlying metadata in the file.  Id. at *4.  Judge Linares found that this was a factual misunderstanding because plaintiff now admits the error was apparent on the face of the documents.  Id. at *5.

In addition to this ruling, the court affirmed an order by the magistrate judge that the privilege in thirty-seven inadvertently produced documents had been waived.  Id. at *7.  The plaintiff argued that these documents stored on CD and DVD were unreadable and unintelligible, but when produced to the defendant, they became readable through processing.  Judge Linares agreed that this did not constitute reasonable precautions to avoid disclosure.  Id.

The second case, Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251 (D. Md. 2008), has analogous facts to Rhoads.  The defendant produced 165 electronic documents inadvertently, and the plaintiff notified defendant of the error after reviewing the materials.  Id. at 253, 255.  The Maryland court notes that the Fourth Circuit had not yet spoken on the applicable

test to apply in situations of inadvertent production of privileged material, but would likely follow a strict approach.  Id. at 257-58.  However the court then analyzes the facts of the case under the five-factor test stated in Fidelity and concludes the defendant waived the privilege through its inadvertent production.  Id. at 259, 263.

First, as to the reasonableness of precautions taken to prevent inadvertent disclosure, the court states that defendants have failed to provide information regarding several factors:  the seventy keywords used in their search to weed out privileged documents, the rationale for selecting these keywords, the qualifications of the reviewing attorneys to design a privilege search, whether the search was simple or contained Boolean operators, whether the results were analyzed and tested for quality assurance (e.g. through sampling), and the quality of the implementation.  Id. at 259.  The court then cites to several cases for the proposition that keywords searches are appropriate and helpful for electronically-stored information searches but that proper implementation and knowledge is required because of the grave consequences at stake.  Id. at 260-62.  "[T]here is a growing body of literature that highlights the risks associated with conducting an unreliable or inadequate keyword search or relying exclusively on such searches for privilege review."  Id. at 257.  The defendant's arguments concerning the reasonableness of their precautions, the volume of electronic information, and strict time constraints were unpersuasive to the court.  Id. at 262.

Second, as to the number of documents disclosed, the court stated that production of 165 documents was not "an instance of a single document slipping through the cracks."  Id. at 263.

Third, as to the extent of disclosure, the court noted that the documents were substantive, including "numerous communications between defendants and their counsel," so any attempt at

redress would be too late.  Id.

Fourth, as to the delay and measures taken to rectify the disclosures, the court stated that "it is noteworthy that the Defendants did not discover the disclosure, but rather the Plaintiff made the discovery and notified the Defendants that potentially privileged/protected ESI had been produced," in contrast to a situation where the defendant discovered its own disclosure promptly and took steps to rectify it.  Id.

Finally, as to the overriding interests of justice, the court stated that defendant could point to no overriding interests of justice to excuse the consequences of producing privileged materials. Id.  ("The only 'injustice' in this matter is that done by Defendants to themselves.")

## C.   **Mandatory Privilege Log**

Under Federal Rule 26(b)(5), when a party withholds information otherwise discoverable by claiming attorney-client privilege in the information, that party must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).   "[F]ailure to assert a privilege properly may amount to a waiver of that privilege."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 914 F.Supp. 1172, 1178 (E.D.Pa. 1996).

In Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc., 2000 WL 1201385 (E.D. Pa. 2000), Magistrate Judge Rueter found that the plaintiff's assertion of attorney-client privilege had been waived in all documents responsive to the defendant's discovery request because the plaintiff failed to produce a timely privilege log as ordered by the court.  Id. at *2-3.  Instead the plaintiff produced the log nearly two months after the court's ordered date.  Id. at *2. By contrast, in In re Total Containment, Inc., 2007 WL 1775364, at *8 (Bankr. E.D. Pa. 2007), Judge Fox found that

the plaintiff's amended privilege log was "sufficiently prompt as to avoid a waiver of all

privilege."  (citing to <u>U.S. v. Union Pac. R.R. Co.</u>, 2007 WL 1500551, at *3-4 (E.D. Cal. 2007)

(where a privilege log was provided within four days of the original production and an amended

log was produced in less than a month)).

**D.**     **Facts Re: Production of Privileged Documents and Logs**

At the evidentiary hearing on the privilege issue, Rhoads called two witnesses–Kimberly

Buchinsky, an associate of one of Rhoads' firms, Gowa Lincoln P.C., who was directly involved

in the production of documents on behalf of Rhoads to the Defendants; and Salvatore Gramaglia,

a specialist in information technology retained by Rhoads, who was assigned to work with Ms.

Buchinsky in the production of documents to the Defendants and screening and elimination of

privileged documents in this case.  Based on the briefs submitted, the testimony of Mr.

Gramaglia and Ms. Buchinsky, and representations by counsel, the following facts are relevant to

the production of privileged documents and privilege logs.

In February 2007, Rhoads began preparing for this litigation and thereafter retained

consulting experts.  In June 2007, Rhoads realized that extensive electronic discovery would be

involved in this case.  For that purpose, it directed its IT consultant, Mr. Gramaglia, to research

various software programs.  After testing a trial version of the program, Mr. Gramaglia

purchased a computer program called Discovery Attender (or "Sherpa") to perform the necessary

electronic searches.  Mr. Gramaglia and Ms. Buchinsky began identifying mailboxes and e-mail

addresses of persons that would have relevant information to Rhoads's project with GAF.

Gramaglia and Buchinsky reasonably believed that the computer program would screen out all

privileged materials.

The fact that Rhoads retained a consultant who recommended and used a fairly sophisticated screening device shows that Rhoads' substantially complied with the following Explanatory Note to Rule 502:

> A party that uses advanced analytical software applications and linguistic tools in screening for privilege and work product may be found to have taken "reasonable steps" to prevent inadvertent disclosure.  The implementation of an efficient system of records management before litigation may also be relevant.

Fed. R. Evid. 502 advisory committee's note.

Rhoads pursued settlement efforts prior to instigating litigation, which were unsuccessful.  Rhoads filed its Complaint on November 13, 2007.  Discovery commenced shortly thereafter.  In November and December, Mr. Warshawer–counsel brought in for the purposes of this litigation– held several meetings with Ms. Buchinsky and Mr. Gramaglia to discuss electronic discovery and observe the Sherpa program.  Mr. Gowa–a partner with Gowa Lincoln, one of Rhoads's regular counsel–also was involved in discussions with Mr. Gramaglia and Ms. Buchinsky about the scope of electronic discovery and the search terms to be used in relevant searches.

During January and February 2008, using the search terms he received from Rhoads's attorneys, Mr. Gramaglia initially identified 210,635 unique e-mail messages as being responsive to Defendants' discovery requests.  In order to filter out privileged e-mails, he ran the following searches in the address line of all emails: *rhoadsinc* and either *gowa*, *ballard*, or *cpmi*.[5] Through this search, Mr. Gramaglia designated 2,000 e-mails as privileged; these e-mails were removed from the folder ultimately produced to Defendants.  However, these e-mails were not

---

[5]Gowa Lincoln is Rhoads's law firm representing it in this case and other non-litigation matters.  Ballard is another law firm that represents Rhoads.  CPMI was retained by Rhoads as a non-testifying expert in this case.

placed on a privilege log at that time.  Mr. Gramaglia re-ran the above search to be certain that all

e-mails meeting the designated criteria had been removed, verifying the accuracy of the search.

       Due to the large number of e-mails remaining (208,635), Rhoads's counsel revised the

keyword search to arrive at 78,000 e-mail messages it believed to be responsive and non-

privileged as of February 26, 2008.  Ms. Buchinksy then conducted a separate manual review of

e-mails from specific e-mail mailboxes (but not all of the mailboxes subject to the keyword

search described above) and removed certain documents as privileged, logging them on a

privilege log (See Ex. P-2).  In addition to the e-mail messages, Rhoads counsel also reviewed

twenty-two boxes of non-electronic documents for privilege.  On May 13, 2008, Rhoads

produced to Defendants three hard drives containing the responsive electronic documents,

including the 78,000 e-mails identified by the Sherpa search.  On June 6, 2008, in response to

Judge Diamond's Order (Doc. No. 36), Rhoads produced two separate privilege logs to

Defendants: one detailing privileged electronic documents as a result of Ms. Buchinsky's manual

review (Ex. P-2) and one detailing privileged non-electronic documents (Ex. D-2).

       On June 5, 2008, Defendant GAF's counsel notified Plaintiff's counsel via e-mail that

certain documents that appeared to be privileged had been produced.  Plaintiff responded

immediately via e-mail stating that no privilege had been waived and this was likely a case of

inadvertent production.  Over the next two and a half weeks, Plaintiff conducted nine depositions

conducted and responded to R.W. Cooper's Motion to Dismiss before addressing the privilege

issue.  On or about June 23, 2008, Ms. Buchinsky began reviewing the 78,000 e-mails produced

as a result of the Sherpa search and generated a new privilege log that identified 812 of these e-

mails as privileged.  Rhoads produced this new privilege log (Ex. D-1) to Defendants on June 30,

2008, as an attachment to a letter invoking Rule 26(b)(5)(B) to have Defendants sequester the inadvertently produced documents. (Def. Cooper's Mot. Deem Pl. Waived Privilege Ex. B.)

On August 19, 2008, Defendant R.W. Cooper filed a Motion to Deem that Plaintiff had Waived the Privilege as to the approximately 800 inadvertently produced documents (Doc No. 60). Defendant GAF filed a Motion Joining Cooper's Motion on August 25, 2008 (Doc. No. 63). Defendants do not dispute that the production was inadvertent and that the software purchased by Rhoads was designed to ferret out privileged documents. Defendants do argue, and have substantial facts to support the conclusion, that Rhoads's technical consultant and counsel were not sufficiently careful to review the software screening and to take steps to prevent disclosure when it appeared obvious that privileged material had filtered through the screening procedure.

At the first hearing held on the waiver of privilege on November 5, 2008, the three separate logs described above were produced, and Mr. Gramaglia and Ms. Buchinsky testified, explaining how the logs were created and how they relate to each other. Also at the hearing Rhoads admitted that the 2,000 e-mails originally set aside as privileged as a result of the Sherpa search had not been identified on a privilege log. Ms. Buchinsky testified that she believed her manual review of e-mails contained in specific mailboxes would have captured these privileged e-mails and therefore would have appeared on her June 6th log of electronic documents (Ex. P-2). This Court ordered that any documents not on a privilege log as of the date of that hearing should be produced, absent exceptional circumstances.

After the hearing, Rhoads inspected the 2,000 e-mail documents set aside as a result of the Sherpa search and created a fourth privilege log (Exs. D-8A, D-8B) produced to Defendants on November 12, 2008, and discussed at the hearing which took place on November 13, 2008.

-12-

On the logs and in its attendant letter (Ex. D-8), Rhoads identified that, of the 2,000 e-mail documents, 941 documents were duplicative.  Of the 1,059 unique documents, it identified 548 documents as non-responsive and 511 as responsive broken down as follows: 335 privileged documents and 176 non-privileged documents.  In addition, of the responsive, privileged documents, 215 had been previously logged in either Ex. D-1 or Ex. P-2.  Rhoads did not present any exceptional circumstances as to why these documents should not be produced but did agree to produce the 176 non-privileged documents that had not been previously produced.  Defendants presented additional argument that has led this Court to question whether Rhoads may still be retaining privileged and un-logged documents.

        Based on my statement at the November 5 hearing and for the reasons set forth below, I ordered, at the conclusion of the November 13 hearing, that any responsive, non-attorney-work-product documents not placed on a privilege log as of June 30, 2008 must be produced to Defendants, including those logged on Exs. D-8A and D-8B.  I took the issue of waiver of privilege as to the 812 documents listed on the June 30, 2008 privilege log (Ex. D-1) under advisement and will now discuss this issue.

**E.      Burden of Proof Re: Waiver of Privilege**

        The party claiming that the privilege exists bears the burden of proving that it applies to the communication at issue. Sampson v. Sch. Dist. of Lancaster, 2008 WL 4822023, at *3 (E.D. Pa. 2008) (citing In re Grand Jury Empanelled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979)).

        A party claiming waiver has the burden of proof as to waiver.  Although the Third Circuit has not specifically endorsed such a test, it is well supported in district court case precedents. "As the party challenging the privileged communication, Plaintiff bears the burden of showing

-13-

that Defendants waived the privilege." <u>Sampson</u>, 2008 WL 4822023 at *8 (citing <u>Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.</u>, 227 F.R.D. 382, 390 (W.D.Pa. 2005)).  Pennsylvania follows the same rule.  <u>Murray v. Gemplus Int'l, S.A.</u>, 217 F.R.D. 362, 366 n.5 (E.D. Pa. 2003) (citing Pennsylvania cases).

**F.    Findings of Evidence on Inadvertent Waiver**

After reviewing all of the evidence and briefs, the Court will summarize the factors in favor of each side before coming to a conclusion.  Using the <u>Fidelity</u> factors, the following are relevant:

(1)    The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production.

<u>Favoring Plaintiff</u>

- Plaintiff purchased a special software program, Discovery Attender, for the purposes of complying with discovery in this litigation.
- Plaintiff's technical consultant (Mr. Gramaglia) conducted trial searches prior to purchasing the software and was satisfied with its reliability and accuracy.
- Mr. Gramaglia was experienced with Rhoads's computer system.
- Plaintiff believed that its search terms would pick up all attorney-client communication.
- Plaintiff did not use "Warshawer" or "Costello" (outside counsel) as search terms because counsel believed Gowa was included on all e-mails going to the client.
- Plaintiff did not include "privileged" or "confidential" as keyword search terms because all Rhoads e-mails use these words in the signature line at the bottom of every e-mail, and thus use of these words would have identified every Rhoads document as privileged.
- Ms. Buchinsky spent over 40 hours reviewing documents for privilege before production.  Additional attorneys spent significant hours on the privilege review.

<u>Favoring Defendant</u>

- Plaintiff should have used additional search terms to weed out potentially privileged documents, especially the names of all of its attorneys.  <u>See</u> <u>Bensel v. Air Line Pilots Ass'n</u>, 248 F.R.D. 177, 180 (D.N.J. 2008).
- Ms. Buchinsky had no prior experience doing a privilege review and her

-14-

supervising attorneys did not provide any detailed oversight.

- Plaintiff's search for privileged documents was limited to e-mail address lines (as opposed to the e-mail body).  Therefore any potentially privileged e-mails (as defined by Plaintiff's search terms) that were subsequently forwarded outside of Rhoads and either Gowa, Ballard, or CPMI would not be captured by its search.

- Plaintiff produced documents that its limited search should have caught. Therefore Plaintiff not only failed to craft the right searches, but the searches it ran failed.  Plaintiff has no explanation for this.

- As <u>Stanley</u> notes, relying exclusively on a keyword search for the purpose of conducting a privilege review is risky, and proper quality assurance testing is a factor in whether precautions were reasonable.  <u>Victor Stanley</u>, 250 F.R.D. at 257, 260.  Here there was no testing of the reliability or comprehensiveness of the keyword search.

- Plaintiff's only testing of its search was to run the same search again.

(2)     The number of inadvertent disclosures.

<u>Favoring Plaintiff</u>

- As the court reasoned in <u>Fidelity</u>, compared to the 78,000 email files produced by Rhoads in this case, the approximately 800 privileged documents inadvertently produced (listed on the June 30th log, Ex. D-1), plus the 120 documents[6] that Plaintiff admits are privileged but did not log until November 13 (Ex. D-8B) and is now ordered to produce and possible additional privileged documents that may have been produced but not logged, represent a small percentage (1-2%) of the total production.  <u>Fidelity & Deposit Co.</u>, 168 F.R.D. at 522.

<u>Favoring Defendant</u>

- 800 inadvertently produced documents plus at least 120 privileged documents that this Court now orders be produced is still a large number of documents regardless of the percentage produced.

- The court in <u>Stanley</u> found that 165 documents was a sufficiently large number to favor waiver of the privilege.  <u>Victor Stanley</u>, 250 F.R.D. at 263.

(3)     The extent of the disclosure.

- There is a lack of evidence on the record as to whether this factor weighs in favor of the Plaintiff or Defendant.

_____

[6]The Court arrived at this number by taking the 335 privileged documents claimed in the November 12th privilege log (Ex. D-8B) and subtracting the 215 documents that Plaintiff claims were previously logged.

(4)     Any delay and measures taken to rectify the disclosure.

Favoring Plaintiff

- Plaintiff immediately responded to Defendant's e-mail that some potentially privileged documents had been produced by stating that production was inadvertent and inquiring which documents Defendant was referring to.
- As relied on in Fidelity, Plaintiff was under a tight discovery schedule at the time it was notified of the inadvertent production.  Fidelity & Deposit Co., 168 F.R.D. at 522.  Ms. Buchinsky was helping prepare for nine depositions taken over the course of twelve days.  Plaintiffs also had to respond to Defendant Cooper's Motion to Dismiss during this time.
- Plaintiff invoked the remedial measure of FRCP 26(b)(5)(B) to have the inadvertently produced documents sequestered at the same time it produced the June 30th privilege log (Ex. D-1), three weeks after learning of the disclosure.
- Plaintiff was willing to produce a cleansed hard drive (i.e. without the privileged documents) to Defendants in September, but Defendants refused the hard drive.
- Defendant did not file their Motion to Deem that the Privilege was Waived until two months after Plaintiff produced the June 30th privilege log (Ex. D-1).

Favoring Defendant

- Plaintiff had abundant time to review its own documents and segregate any privileged documents before it started the litigation and also before it began producing documents in May 2008.
- The crunch and time pressure that Plaintiff claims it suffered in June 2008 were caused by Plaintiff not providing adequate resources (e.g. attorneys or paralegals) to the privileged communication issue.
- Defendants had to bring Plaintiff's error to its attention instead of Plaintiff catching its own mistake.  See Victor Stanley, 250 F.R.D. at 263.
- It took Plaintiff over three weeks to produce a privilege log of the inadvertently produced documents once it was aware of its mistake.
- The June 30th privilege log (Ex. D-1) required Defendants to cross-reference each document produced to them against the log to check whether documents were in fact privileged.  Plaintiff did not offer Defendants a cleansed hard drive until September.
- Plaintiffs did not offer suggestions to rectify the inadvertent production until October, after many depositions had been taken.

(5)     Whether the overriding interests of justice would or would not be served by relieving the party of its errors.

-16-

Favoring Plaintiff

- Plaintiff has shown general compliance with the three conditions of Rule 502, although considering the factors in the prior case law, Plaintiff is responsible for the confusion and delay noted above.
- The loss of privilege would be highly prejudicial to the Plaintiff.
- Defendants have not demonstrated substantial unfairness that they have suffered because of their inability to review the privileged documents beyond having to cross-reference documents against the June 30th privilege log (Ex. D-1).

Favoring Defendant

- Plaintiff should have conducted a more rigorous privilege review and allowing Plaintiff to retain the privilege in these documents may not deter similar conduct in the future.

## G.  **Conclusion**

### 1.  **Ruling on Privilege Log**

Concerning the privileged documents produced by Rhoads which were not listed on any of the logs served by June 30, 2008, the obligation to log privileged documents is mandatory under the specific terms of Rule 26(b)(5).  Despite Rhoads's attempts to justify, explain and minimize its failure to log all of its inadvertently privileged documents by June 30, 2008, the Court finds that the delay in doing so until November 12, 2008 is too long and inexcusable.  This conclusion does not entail any analysis of F.R.E. 502, because of the clear mandate of Federal Rule of Civil Procedure 26(b)(5).

### 2.  **Ruling on Inadvertently Disclosed Documents on Privileged Logs as of June 30, 2008**

In approaching a conclusion, and recognizing that Rule 502 is a recent addition to the law, I believe that the most appropriate approach is to first determine whether the producing party has at least minimally complied with the three factors stated in Rule 502, i.e., that the

waiver was inadvertent, the party took reasonable steps to prevent disclosure, and attempted to rectify the error.

In this case, there is no dispute that the production of the privileged documents was inadvertent; the dispute is over whether the steps taken by Rhoads were "reasonable." Consistent with the Committee Note to Rule 502, I conclude that once the producing party has shown at least minimal compliance with the three factors in Rule 502, but "reasonableness" is in dispute, the court should proceed to the traditional five-factor test discussed above.

Although I have gained much from the review of both <u>Stanley</u> and <u>Amersham</u>, I do not find that either one of them is controlling. Although Judge Linares did apply the traditional five factor test, the facts presented to him in <u>Amersham</u> were very different than those here. The facts in <u>Stanley</u> are more similar to the facts in this case; however, I believe that Judge Grimm's analysis reflects, to a more significant degree than I believe appropriate, application of hindsight, which should not carry much weight, if any, because no matter what methods an attorney employed, an after-the-fact critique can always conclude that a better job could have been done.

By its very terms, Rule 502 looks to what was "reasonable" and this test must be applied on an objective basis.[7]

_____

[7]Standards crafted on the basis of "objective reasonableness" or the "objectively reasonable person" are applied in a broad array of legal contexts. For instance, in civil litigation, the qualified immunity analysis in civil rights cases, <u>Curley v. Klem</u>, 499 F.3d 199, 206-07 (3d Cir. 2007), the standard for awarding attorneys' fees under 28 U.S.C. § 1447 in response to improper removal, <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005), the standard for whether a plaintiff was engaged in protected conduct for retaliation claims under Title VII, <u>Wilkerson v. New Media Tech. Charter Sch. Inc.</u>, 522 F.3d 315, 322 (3d Cir. 2008), and the standard for constructive discharge in Title VII claims, <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 974 (3d Cir. 1998), all focus on this principle of "objective reasonableness." The same is also true in criminal law, where the scope of the Fourth Amendment's privacy protections, <u>California v. Ciraolo</u>, 476 U.S. 207, 211 (1986), the standard for effectiveness of counsel,

Although Rhoads took steps to prevent disclosure and to rectify the error, its efforts were, to some extent, not reasonable.  As to the five-factor balancing test, reviewed in the context of the evidence summarized above, I find that the first four factors favor Defendants.  The most significant factor, after listening to the witnesses and arguments of counsel, is that Rhoads failed to prepare for the segregation and review of privileged documents sufficiently far in advance of the inevitable production of a large volume of documents.  Once this lawsuit seeking millions of dollars in damages was filed, Rhoads was under an obligation to put adequate resources to the task of preparing the documents, which was completely within Rhoads's control.  An understandable desire to minimize costs of litigation and to be frugal in spending a client's money cannot be an after-the-fact excuse for a failed screening of privileged documents, just as I refuse to use hindsight to criticize Rhoads for mistakes that were made but perhaps unforeseeable.  Although hindsight is surely twenty-twenty, if it is not to be used, it cannot be used to favor one side to the prejudice of the other.

I find that the fifth factor, the interest of justice, strongly favors Rhoads.  Loss of the attorney-client privilege in a high-stakes, hard-fought litigation is a severe sanction and can lead to serious prejudice.  Although I have little knowledge of the content of Rhoads's privileged documents, I assume they contain candid assessments of the facts and strategy in this case, as to which Rhoads understandably has a high degree of proprietary interest.

On the other hand, denying these documents to Defendants is not prejudicial to Defendants because, in the first place, they have no right or expectation to any of Rhoads's

---

Strickland v. Washington, 466 U.S. 668, 687 (1984), and the effectiveness of consent for purposes of a search by law enforcement, Florida v. Jimeno, 500 U.S. 248, 251 (1991), are examples of legal tests built on "objective reasonableness."

privileged communications, and further, because of my ruling on the privileged documents not logged by June 30, 2008, the Defendants will receive a significant number of privileged documents.  Furthermore, there has been abundant discovery on the merits of this case, and expert depositions await completion.[8]

The other factor that I have considered in reaching this conclusion is that the Defendants, as the moving party challenging the assertion of privilege, have the burden of proof.  Considering all of the factors, I find that the Defendants have not met that burden of proof as to the privileged documents logged by June 30, 2008.

This discussion need not be extended to extol in any detail the societal and historical value which the law attaches to privileged communications between attorney and client.   Except for the privilege log issue, disturbance of these communications is not justified under all of the facts and circumstances of this case, as reviewed above.[9]

An appropriate Order follows.

---

[8]There is a lingering issue as to whether any of Rhoads's privileged documents were disclosed to its testifying experts.  Defense counsel may explore this in the expert depositions, if not before.

[9]Rhoads's production of privileged documents, notwithstanding that it was inadvertent, has led to extensive briefing and preparation for hearings and argument, and Defendants have incurred considerable costs because of this production.  Although I believe it would be equitable for Rhoads to reimburse Defendants for some portion of their attorneys fees in dealing with this issue, Defendants have not made such a request, and the rules do not specifically provide for the award of expenses in this situation.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RHOADS INDUSTRIES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 07-4756 |
| BUILDING MATERIALS CORP. OF AMERICA, | : | |
| et al. | : | |

## <u>ORDER</u>

AND NOW, this    14th    day of November, 2008, for the reasons stated in the foregoing

Memorandum, it is hereby ORDERED as follows: Defendants' Motions (Doc. No. 60 and 63)

are GRANTED in part and DENIED in part.


BY THE COURT:

s/Michael M. Baylson

_____
Michael M. Baylson, U.S.D.J.



O:\CIVIL 07-08\07-4756 Rhoads v. GAF\Rhoads v. GAF - memo waiver of atty client privilege.wpd